UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

BERTRAND M. TREMBLAY, JR.   )
                            )
V.                          )   NO. 2:09-CV-265
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation with respect to this judicial appeal of the denial of the plaintiff's application for disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 36 years of age at the time of his administrative denial of benefits following a hearing before an Administrative Law Judge ["ALJ"] in Florida. He had past relevant work experience as a construction laborer, which the ALJ found to constitute medium work. He has a high school education. His insured status expired on June 30, 2006.

The medical evidence is summarized in the Commissioner's brief as follows:

> On October 30, 2004, Plaintiff was treated in the emergency room after falling fifteen feet from scaffolding (Tr. 541-42). Testing of the wrists showed bilateral distal radial fractures but no back or neck trauma (Tr. 184, 543-44). An MRI of the back showed broad based herniated disc at L4-5, and an MRI of the neck showed normal to moderate findings (Tr. 191- 94). Plaintiff's wrists were treated with splints, casts, and pain medication and he was ordered to stay off work (Tr. 185, 477-78, 543-44). About a week after his fall, the splints were removed, and approximately two months later — in January 2005— the casts were removed (Tr. 477-78).
> Dr. Cooper, an orthopaedic specialist treating Plaintiff after the October 2004 accident, noted good range of motion in the neck and back and full strength in the upper and lower extremities (Tr. 175). At one follow-up visit, Dr. Cooper observed that Plaintiff did "a lot" of wincing and grimacing "to draw attention to his pain," which was excessive, and he ordered further testing to see if this pain behavior could be substantiated (Tr. 179). Plaintiff requested Percocet, which Dr. Cooper declined to prescribe, directing Plaintiff to obtain narcotic medication through his treating physician, Dr. Hussamy (Tr. 180).
> In March 2005, Plaintiff was treated in the emergency room for back pain (Tr. 216). Plaintiff reported being out of pain medication since January (Tr. 216). Plaintiff was discharged, directed to use Motrin, and ordered to follow up with pain management (Tr. 217-220). That month, Plaintiff was also treated by pain specialists, Drs. Platzek and Silverberg, who diagnosed a herniated disc at L4-5, chronic neck pain with radiculopathy, and low back pain syndrome with radiculopathy, prescribed dilaudid (narcotic pain medication), and ordered physical therapy (Tr. 294). In May 2005, Dr. Platzek ordered nerve studies of Plaintiff's upper and lower extremities and referred Plaintiff for a psychiatric evaluation (Tr. 421).

Nerve testing in July 2005 showed mild right neuropathy at the wrist, moderate left L5-S1 radiculopathy, and moderate right S1 radiculopathy (Tr. 407-08). Following testing, Dr. Hussamy, Plaintiff's treating hand specialist, noted that Plaintiff's wrists were "doing well" with full range of motion, full strength, and no tenderness (Tr. 468-75, 479). Testing of the wrists revealed healed fractures, leading Dr. Hussamy to declare it was a "good result" (Tr. 479). He diagnosed mild right carpal tunnel syndrome and advised Plaintiff to return to medium work, with no restriction, except for a brace on the right wrist, and to obtain further evaluation and treatment of his neck (Tr. 463, 479).

That same month, Dr. Pratt examined Plaintiff in connection with his disability application (Tr. 312-16). Dr. Pratt described Plaintiff as argumentative and agitated, claiming he would "put forth a lawsuit" if he did not get disability (Tr. 316). Dr. Pratt noted that Plaintiff moaned and groaned throughout the examination and had a "very exaggerated response" on testing (Tr. 315). During the examination, she observed him dragging his right leg behind him, unable to put it in front of the left leg and move forward. She noticed, however, that on walking out into the parking lot, Plaintiff was able to put his right leg out first (Tr. 314). She questioned whether his use of a cane was medically required (Tr. 316). She found decreased range of motion in the wrists and "nearly every joint tested;" and, while she believed that Plaintiff had some pathology, she was concerned that he had not put forth his best effort on testing and had exaggerated his responses (Tr. 316).

In August 2005, Dr. Ravipati reviewed the medical evidence in connection with Plaintiff's disability application and found that Plaintiff could lift up to twenty pounds but could not stand or walk more than two hours in an eight hour day (Tr. 318). At about the same time, Dr. Director, a psychiatrist, evaluated Plaintiff (Tr. 325-29). He observed that Plaintiff was angry over his insurance and felt he could do more activities with an adequate amount of pain medication (Tr. 327). Dr. Director diagnosed mild to moderate depressive disorder, pain disorder, and neuro-orthopedic injuries secondary to his October 2004 fall (Tr. 328). He opined that Plaintiff's psychological symptoms were related to his fall, were not severe, and would diminish with improvement in his pain management (Tr. 328-29). He suggested various pain medications that might alleviate Plaintiff's pain symptoms (Tr. 329). Also in August 2005, Dr. Afshar, a spine specialist, examined Plaintiff, finding that testing of Plaintiff's neck revealed only mild findings, "at best" (Tr. 355). He recommended against surgery and noted Plaintiff's desire to undergo pain management (Tr. 355).

That fall Plaintiff reported difficulty performing his daily chores, and massage therapy was recommended (Tr. 415). During the fall of 2005 and into early 2006, Plaintiff was treated by Dr. Pinzler, a family practitioner, who prescribed Plaintiff Xanax, OxyContin and Percocet (Tr. 295-99).

In April 2006, Dr. Andriole reviewed the records in connection with Plaintiff's disability application (Tr. 357-64). He opined that Plaintiff could lift up to twenty pounds and could stand and walk up to two hours in an eight-hour day (Tr. 358).

The following month, pain specialist, Dr. Cordner, examined Plaintiff (Tr.

3

367-69). Dr. Cordner observed that Plaintiff seemed "to have more issues with his anger at the worker's compensation system than anything else" (Tr. 368). Dr. Cordner explained to Plaintiff that, as a young person, he could not be kept on narcotics for a long period of time and noted that Plaintiff was "extremely defensive" (Tr. 368). Dr. Cordner observed that the MRI of Plaintiff neck was "fairly normal" and that there was nothing to explain his symptoms (Tr. 369). Plaintiff told Dr. Cordner that he was "unsure of his real desire to back to work," and, while he said there was no way he could sit in a chair and work, he admitted to sitting in a chair all day and watching television (Tr. 369). Dr. Director reported in a questionnaire that month that Plaintiff's primary limitation was orthopedic in nature (Tr. 366).

In June 2006, Drs. Rodenhauser and Edney, performed a psychological evaluation in connection with Plaintiff's disability application (Tr. 370-72). Plaintiff told them he was depressed; they noted that he exhibited adequate skills in concentration, recent memory, reasoning, and social judgment (Tr. 372). They diagnosed an adjustment disorder with depressed mood (Tr. 372). That same month, Plaintiff saw Dr. Director, who noted Plaintiff's frustration with his chronic pain and the handling of his claim (Tr. 398).

In July 2006, Dr. Mendelson reviewed the records in connection with Plaintiff's disability application (Tr. 373-84). He opined that Plaintiff had an adjustment disorder with depressed mood, resulting in mild to no limitations (Tr. 376, 383).

In July 2006, Plaintiff also saw Dr. Afshar again (Tr. 350-51). Dr. Afshar noted that Plaintiff was in mild to moderate distress, but he found full strength in all muscle groups and near full strength in his grip, which he noted appeared to be effort-related due to pain (Tr. 351). He found worsening chronic neck pain and upper extremity pain, secondary to cervical disc protrusion and carpal tunnel syndrome, as well as chronic low back pain with lower extremity radiculitis, secondary to L4-5 disc protrusion/herniation (Tr. 351). Dr. Afshar recommended repeat testing of the neck and low back (Tr. 351).

In June 2007, Dr. Director reported that Plaintiff's mood was "steady with an air of annoyance and periods of mild to moderate depression related to his functional decline" (Tr. 550). A few months later, Plaintiff told Dr. Director that he was falling deeper into debt in connection with his worker's compensation claim and now owed his parents about $13,000 (Tr. 549).

At the end of 2006 and through 2007, several of Plaintiff's doctors, including Drs. Pinzler, Director, and Afshar, completed questionnaires, variously rating Plaintiff's ability to lift and carry, sit and stand, grasp, concentrate, and bend and stoop (Tr. 387-89, 390-94, 395-97, 553-57, 566-70). Dr. Pinzler, for example, opined that Plaintiff's impairments would frequently interfere with his ability to concentrate and sit for two hours or more (Tr. 554-55).

In June 2008, at the request of the ALJ, Dr. Levine completed interrogatories after reviewing the evidence (Tr. 571-72). Dr. Levine reported that the records supplied to him were inadequate in content and information and also conflicting (Tr. 571). He opined that, if no listing was met, Plaintiff could carry up to twenty pounds and could sit, stand, and walk up to six hours but not more than thirty

minutes at a time (Tr. 571).

[Doc. 18, Pgs. 4-8].

The Florida ALJ elected not to call a vocational expert.

In his hearing decision, the ALJ found that the plaintiff had severe impairments which were status-post bilateral wrist fractures, degenerative disc disease of the lumbar and cervical spine, and right carpal tunnel syndrome. [Tr. 16]. He found that the plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." [Tr. 18]. He found that the plaintiff, through the date his insured status expired at least, "had the residual functional capacity to perform the full range of light work.." as defined by the applicable regulations. Based upon Section 202.20 of the listings, and based upon the plaintiff's vocational history, education and age, he found that he was not disabled. [Tr. 21].

Obviously, there must be substantial evidence as defined above that (1) the plaintiff was capable of the full range of light work, and (2) that he did not have a severe mental impairment as of June 30, 2006, when his insured status expired.

Light work, as defined in 20 C.F.R. § 404.1567 (b), requires lifting no more than twenty pounds, frequent lifting or carrying up to ten pounds, a "good deal" of walking or standing, and, if it involves sitting most of the time, "some" pushing or pulling. Generally, it requires intermittent sitting, occasional stooping, and six hours of standing or walking in an eight-hour day. In fact, "the full range of light work requires standing or walking, off and on, *for a total of approximately 6 hours of an 8 hour workday*. Sitting may occur intermittently in the remaining time." *Social Security Ruling 83-10*, 1983 WL 31251, at *5.

5

The ALJ "hung his hat" on the opinion of Dr. Hussamy, who "noted in July 2005 that the claimant could return to medium-level work, without restriction." [Tr. 20]. Dr. Hussamy was the treating physician regarding the injuries to the plaintiff's hands and wrists incurred in his fall. His last opinion says "[r]ecommend he return to work *regarding his hands with no restrictions...*" [Tr. 525]. Thus, Dr. Hussamy's assessment was restricted to the plaintiff's use of his hands, and tells us nothing regarding the effect of his degenerative disc disease on his ability to stand, or walk, or sit, or for how long, and for how long without the need to change positions. The question now becomes whether there was other medical evidence of his functional capacity regarding his neck and back impairment.

Unfortunately, and obviously, not one other physician, either treating or reviewing, found that the plaintiff could perform a full range of light work. Dr. Ravipati, a state agency non-examining physician, found the plaintiff could stand and/or walk "at least 2 hours in an 8-hour workday." [Tr. 318]. Dr. Andriole, another state agency physician, found the same. [Tr. 358]. Neither found he could stand and/or walk for "about 6 hours in an 8-hour workday," which was the next option on their assessment forms, and which is the clear requirement of the full range of light work. Dr. Levine, who answered interrogatories after reviewing the record, opined "plaintiff could stand/walk 6 out of 8 hours, *but no longer than 30 minutes at one time*." [Tr. 572]. This is as close to any substantial evidence supporting a finding that plaintiff could perform the full range of light work, and it falls short due to the requirement of a sit/stand option every 30 minutes.

If the ALJ had found the plaintiff to have the RFC opined by Dr. Levine, *and* had utilized a vocational expert to identify light duty jobs which required such a sit/stand option,

the Court would be considering whether this could overcome the opinions of the plaintiff's treating physicians which were much more limiting and which were rejected by the ALJ. But the simple fact remains that, as far as this Court can tell from reviewing the entire record, no one opined that he had the necessary physical requisites to perform the full range of light work. Thus, there is no substantial evidence to support the ALJ's finding that he could.[1]

One can argue that the ALJ discounted the findings of the treating doctors based upon the fact that they came after the expiration of plaintiff's insured status, or that their objective findings did not fully support their opinions, or that plaintiff exaggerated his symptoms and did not put forth proper effort. Even if all of that is true, which is highly probable in this case, something must bridge the gap to the full range of light work. The bridge is simply "out."

The issue of whether the ALJ erred in finding that the plaintiff did not have a severe mental impairment is on firmer footing. The state agency reviewer, Dr. Mendelson, found no more than mild degrees of limitation in the area's of difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. [Tr. 383]. These mild limitations, quite believably, were "a normal response to the documented medical facts of the case." [Tr. 385]. Thus, the Court finds that there was substantial evidence to support the ALJ's finding regarding the lack of a severe mental impairment.

However, this point is nearly moot in light of the lack of evidence regarding the plaintiff's ability to do the full range of light work. The Court notes that there is an extreme

---

[1] In an attempt to make sure that a medical assessment opining that the plaintiff could perform the full range of light work was not overlooked by the Court, an order [Doc. 19] was entered on January 7, 2011, apprising the defendant of the Court's concerns and asking him to file a supplement to his motion by January 14, 2011, directing the Court to where such an assessment could be found in the record. As of this date, January 20th, no supplement has been filed.

likelihood, based upon experience in innumerable other Social Security cases, that a vocational expert would have identified a substantial number of jobs which a person of plaintiff's age, work history and education could have performed if he were limited to the extent found by Dr. Levine and others in the record. Sadly, that did not happen, and it is a matter for vocational proof. In the opinion of the Court, the position of the Commissioner is not substantially justified.

This leaves everyone in an unusual posture. The Court does not believe that the record establishes entitlement to benefits. Accordingly, the case should be remanded for further development to determine the plaintiff's correct residual functional capacity, and for vocational expert testimony as to whether a substantial number of jobs exist which he can perform. To that end, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 10] be GRANTED to the extent it suggests a remand, and that the Commissioner's Motion for Summary Judgment [Doc. 17] be DENIED.[2]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(B) and (C).